United States District Court
Southern District of Texas
FILED

JUL 3 0 2003

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

MARIO ALBERTO MARTINEZ-MONTES,            )
                                          )
v.                                        )      C.A. **B-03-133**
                                          )
AARON CABRERA, ACTING DIRECTOR            )
   DHS HLG/DO, and                        )
PHILIP D. TUTAK, INTERIM DISTRICT         )
   DIRECTOR FOR INTERIOR ENFORCEMENT,     )
   DEPARTMENT OF HOMELAND SECURITY.       )
——————————————————————————————————       )

## PETITION FOR WRIT OF HABEAS CORPUS

Mario Alberto Martinez-Montes, ("Mr. Martinez"), by and through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

## I.  JURISDICTION AND VENUE

1.  Petitioner Mario Alberto Martinez is under an administratively final order of removal (Petitioner's Exhibit A, incorporated by reference), following proceedings conducted in Harlingen, Texas, within the jurisdiction of this Court. The Order places significant restrictions on his liberty not shared by the populace at large, and he is in imminent danger of being physically removed to Mexico. Some, if not all, of the claims he raises herein could not be heard by the Fifth Circuit on petition for review. For example, he claims that it violates Due Process to retroactively characterize simple possession of marijuana as an aggravated felony, when he relied on BIA precedent to the contrary when he negotiated his plea bargain. Such a claim, relating solely to the availability of relief for one who has been found deportable for a controlled substance offense, can be entertained solely in habeas corpus, and not in direct review. *See, e.g., Flores-Garza v. Ashcroft,* 328 F.3d 797 (5th Cir. 2003). Consequently, any claims which could have been heard initially by the Fifth Circuit can still be entertained by this Court, through its supplemental jurisdiction, 28 U.S.C. §1367.

2.  Respondents Cabrera and Tutak also maintain offices and conduct business in Harlingen, Texas.

## II.  THE PARTIES

3.  Mario Alberto Martinez has been a lawful permanent resident, ("LPR"), since December 13, 1976, when he was three weeks old.

4.  Aaron Cabrera is Acting Director HLG/DRO of the Department of Homeland Security, and is sued in his official capacity only.

5.  Respondent Phillip Tutak is the Interim District Director for Interior Enforcement, Department of Homeland Security, ("DHS"). He is also sued in his official capacity only.

## III.  THE FACTS

6.  Mario Martinez is a native and citizen of Mexico. He was brought into the United States by his LPR mother, Maria Montes de Martinez, a lawful permanent resident, on her first return to this country following his birth. As a result, he automatically became an LPR, pursuant to 8 C.F.R. 211.1(a)(2) (1976). He has resided here continuously since that date. Mr. Martinez' entire family is lawfully in the United States. He has a history of steady employment, and has other significant equities.

7.  On or about July 7, 2000, Mr. Martinez pled guilty in Brooks County, Texas, to the offense of (simple) possession of marijuana. Pursuant to a plea bargain, he was granted deferred adjudication, and placed on probation for a period of six years. At that time, this was not considered to be an aggravated felony for immigration purposes. *Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999), and Mr. Martinez relied on that fact in arranging his plea bargain.

8.  On August 8, 2000, a Notice to Appear was issued, and served on Mr. Martinez by certified mail. It alleged, and Mr. Martinez conceded, the above facts relating to nationality and entry. It

2

also alleged that he had been "convicted" of possession of a controlled substance. Removability was charged under 8 U.S.C. §1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and under §1227(a)(2)(A)(iii), for conviction of an aggravated felony. Mr. Martinez denied both charges of removability. He also sought to apply for cancellation of removal.

9. On April 6, 2001, the Immigration Judge found that the deferred adjudication was a conviction, but that it was not an aggravated felony, which charge INS withdrew. However, on March 22, 2002, based on *U.S. v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001), the Judge pretermitted Mr. Martinez' application for relief, and ordered his removal to Mexico. A timely appeal was filed. [1]

10. On appeal, Mr. Martinez raised a number of constitutional claims, including that it would violate Substantive Due Process to conclusively presume that no LPR given deferred adjudication for a marijuana offense which **could have been** classified as a felony if the State of Texas had opted to proceed to adjudication, was worthy of remaining in the U.S.. Consequently, he asserted that the BIA was bound to adopt any other reasonable interpretation of the statute, which would avoid that result. *See, Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any

---

[1] Ironically, this was exactly the procedural posture of *K-V-D-*. The Immigration Judge declined to follow *In re L-G-, supra*, because the Fifth Circuit had issued *U.S. v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), in the context of the U.S. Sentencing Guidelines, holding that whether an offense was an aggravated felony depended on its characterization under state law, rather than it would have been treated under federal law.

3

lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Davis,* 121 S.Ct. 2491 (2001) reading a "reasonable time" limitation into statute authorizing detention of aliens who could not be promptly deported.

11. He also asserted that such a reasonable interpretation exists, notwithstanding *dicta* in the Fifth Circuit's decision in *Hernandez-Avalos,* which criticized *Matter of K-V-D-, supra.* In order to avoid the serious constitutional problems which would otherwise arise, and because the criticism was *dicta,* [2] Mr. Martinez urged

_____

[2]    As stated by the Court in *Hernandez-Avalos, id.* at 509 (footnote in original) (emphasis added):

However, **if we were reviewing Hernandez's removal order** on direct appeal, **and if the issue of statutory interpretation were properly preserved for review,** we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law. [FN3]

FN3. **Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes.** *Cf. Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be

4

the BIA to follow *K-V-D-*.

12.  Given his lengthy residence in the U.S., commencing when he was only three weeks old, his strong family ties, employment history, and other equities, it is a virtual certainty that Mr. Martinez would have earned cancellation of removal, had he received the opportunity to apply for said form of relief.

13.  On June 25, 2003, the BIA dismissed his appeal.  (Exhibit A).

### IV.  THE CAUSES OF ACTION

The deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241, and through the Court's supplemental jurisdiction, 28 U.S.C. §1367.

### 1.  STATUTORY CONSTRUCTION
### a.  AGGRAVATED FELONY

Mr. Martinez first urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether the disposition of the criminal charges constitutes an aggravated felony.  The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Martinez.  To the contrary, Mr. Martinez asserts that the Board correctly decided *Matter of K-V-D-* and that it erred in not applying said decision herein.  *See,*

---

given effect.").

Such "if we were reviewing" and "if the issue of statutory construction were properly preserved" are classic indicia of *dicta*. Similarly, the Court's acknowledgment that it did not consider the possibility of deference further shows that its criticism of *K-V-D-* was *dicta*, and that said decision continues to be binding herein.

5

*Gerbier v. Holmes*, 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without trafficking element constitutes an "aggravated felony" under the INA, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act). *See also, U.S. v. Pornes-Garcia,* 171 F.3d 142 (2nd Cir. 1999) (statutes can have different meanings for purposes of the Sentencing Guidelines, and under the immigration laws).

### b. *MATTER OF ROLDAN,* INT. DEC. 3377 (BIA 1999)

Mr. Martinez also urges that, as a question of law, *Matter of Roldan, supra,* was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra.* *See,* Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (*Matter of Salazar*, 23 I&N Dec. at 237-251). *See also,* Dissenting Opinion of Board Member Moscato, in which Board Member Villageliu, joined. (*Id.*, 23 I&N Dec. at 251-252).

### 2. EQUAL PROTECTION
### a. FEDERAL FIRST OFFENDER ACT

Mr. Martinez next asserts that, for the reasons set forth in *Lujan-Armendariz,* 222 F.3d 728 (9th Cir. 2000), it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Martinez also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it

6

arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he might not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Second or Third Circuits, he would have been held to qualify for cancellation of removal, which relief, he urges, he would in all likelihood have earned in the exercise of discretion.

### 3.   SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Martinez has a fundamental liberty interest in being able to live and work in the U.S., and to remain here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar v. Trominski, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one.  She stands to lose the right "to stay and live and work in this land of freedom," ...  Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit.  As a lawful permanent resident, Mr. Martinez enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Martinez asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a),

7

which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Martinez also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *U.S. v. Hernandez-Avalos* converts a disposition which, at the time of the offense, and of his plea, would have permitted him to seek relief from deportation, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof.

8

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See*, Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original): [3]

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

---

[3] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

9

For a lawful permanent resident such as Mr. Martinez, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana.

It therefore violates Due Process to retroactively apply a new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."

### 5.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Petitioner urges that the order violates international law and treaty obligations with Mexico, his country of origin. *See, Nicholson v. Williams*, 203 F.Supp.2d 153,237 (E.D.N.Y. 2002): [4]

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself.

*See also, Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002), rev. on other grounds, *Beharry v. Ashcroft,* 329 F.3d 51 (2nd Cir. 2003). holding that where a statute appears to contradict international

---

[4]    Although *Nicholson* involved the removal of children from the parent, rather than removal of the parent from the child, the principles are the same.

10

law, an appropriate remedy is to construe it so as to resolve the contradiction. [5]

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178, Texas Bar 03052800

### VERIFICATION OF COUNSEL

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.



_____

### CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibit, was personally delivered to the office of Lisa Putnam, SAUSA, Harlingen, Texas, this  day of July, 2003.

_____

---

[5] *Beharry* concluded that relief was still available where an offense was committed before IIRIRA, but the guilty plea did not occur until after its enactment. It was reversed for lack of jurisdiction because of failure to exhaust administrative remedies.

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIO ALBERTO MARTINEZ-MONTES,       )
                                     )
v.                                   )       C.A. **B-03-133**
                                     )
AARON CABRERA, ACTING DIRECTOR       )
   DHS HLG/DO, and                   )
PHILIP D. TUTAK, INTERIM DISTRICT    )
   DIRECTOR FOR INTERIOR ENFORCEMENT, )
   DEPARTMENT OF HOMELAND SECURITY.  )
———————————————————————————————      )

EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia  22041*

**Brodyaga, Lisa S., Esquire**
**17891 Landrum Park Road,**
**San Benito, TX  78586-0000**

**Office of the District Counsel/HL**
**P.O. Box 1711**
**Harlingen, TX  78551**

**Name: MARTINEZ-MONTES, MARIO ALBERTO**          A21-180-247

<u>D</u>ate of this notice: 06/25/2003

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    MOSCATO, ANTHONY C.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

========================================================================

File:    A21-180-247 - HARLINGEN                    Date:    JUN 2 5 2003

In re: MARTINEZ-MONTES, MARIO ALBERTO

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Brodyaga, Lisa S., Esquire

ON BEHALF OF DHS: Bernstein, Dyann, Assistant District Counsel


ORDER:

    PER CURIAM.  We affirm the decision of the Immigration Judge.  *See Matter of Burbano*, 20
I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an
Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon
review of the record coincide with those the Immigration Judge articulated in his or her
decision").  The respondent's challenge to the constitutionality of statutes enacted by Congress in
his brief on appeal is not appropriate for consideration by this Board.  See Matter of C-, 20 I&N
Dec. 529, 532 (BIA 1992).  Moreover, this Board is required to follow the precedent caselaw of
the United States Court of Appeals for the Fifth Circuit, the jurisdiction in which the instant case
arises. Accordingly, the appeal is dismissed.

*Anthony C. Upceto*
FOR THE BOARD